**Roger GREENLEE, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 1–185A9.**

Court of Appeals of Indiana, First District.

May 15, 1985.

---

Terry A. White, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Lee Cloyd, Deputy Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Defendant Roger Greenlee (Roger) appeals from a conviction of theft. The issues raised on appeal may be restated as follows:

1) Whether the trial court committed reversible error when it admitted testimony regarding conversations between a police polygraph examiner and Roger during a post-testing interview;

2) Whether the jury verdict and judgment entered thereon were contrary to the evidence and law.

We affirm.

On November 9, 1983, Randy Greenlee (Randy) and John Bender (John) stole approximately 508 pounds of scrap metal from Dumes Brothers Salvage Yard. The

next morning, Randy asked his brother Roger to accompany him and John as they went to sell the scrap metal. Roger asked Randy where the scrap metal came from; Randy responded that he and John had collected it. Roger thought that the scrap metal might have been stolen, but he did not question Randy or John further. The three boys drove to A. Silver and Sons junkyard. Roger and John went to the proprietor's office to collect payment for the scrap metal. A receipt was made out in the name of Greenlee.

Subsequently, an information for theft was filed against Roger. The jury found Roger guilty of theft, and judgment was entered on the verdict.

ISSUE ONE

During pre-trial plea negotiations, Roger consented to a polygraph examination administered by a qualified police officer. At the conclusion of the examination, the officer informed Roger that the test indicated deception. Roger was given an opportunity to explain why certain answers were bothering him. Roger admitted that he "had a thought it [the scrap metal] was stolen but he preferred not to ask because he really didn't want to know what they were up to." The police officer was permitted to testify at trial as to this conversation.

■■■ Roger challenges on several grounds the admissibility of the police officer's testimony. Roger first asserts that the testimony arose out of a non-stipulated polygraph examination and was, therefore, inadmissible. In Indiana, the results of a polygraph examination are inadmissible absent waiver or stipulation. *Helton v. State*, (1980) 273 Ind. 211, 213, 402 N.E.2d 1263, 1265. "Although the results of the polygraph examination were not admissible into evidence, the statements made in response to questioning during the course of the polygraph examination surely would have been." *Wyrick v. Fields*, (1982), 459 U.S. 42, 103 S.Ct. 394, 396 n. 1, 74 L.Ed.2d 214. Hence, Roger's first assertion is unavailing.

■■■ Roger contends in the alternative that the testimony of the police officer violated the attorney-client privilege. Relying on *Brown v. State*, (1983) Ind., 448 N.E.2d 10, Roger proposes that the police officer was an agent of defense counsel and that the attorney-client privilege attached to communications between the officer and Roger. The supreme court in *Brown* extended the attorney-client privilege to an attorney's agent provided the communication at issue involved the subject matter about which the attorney was consulted and the agent was retained to assist the attorney in his role of advisor or advocate. *Id.* at 14. In the instant case, Roger's attorney did not retain the police officer to assist him in rendering advice or conducting litigation. Defense counsel agreed to the polygraph examination as part of plea negotiations; if Roger had passed the polygraph examination, the charge against him would have been dropped. Therefore, Roger's reliance on *Brown* is misplaced.

■■■ Roger's third argument is that the trial court violated his Fifth Amendment rights by admitting into evidence the statement made by Roger during the post-examination interrogation. The United States Supreme Court addressed a similar argument in *Wyrick v. Fields, supra*. Fields and his attorney had agreed that Fields should take a polygraph examination. Prior to the examination, Fields was informed orally and in writing of his Miranda rights. Fields then signed a waiver of those rights. At the conclusion of the examination, Fields was advised that there had been deception. Fields, attempting to explain his answers made a damaging admission. Subsequently, Fields sought to suppress that testimony.

The Supreme Court noted that Fields had waived his Fifth Amendment rights with regard to the polygraph examination itself. The issue was whether Fields had waived his rights with regard to the post-test interview. The Court suggested that the questions put to Fields after the examination would not have caused him to forget the

rights of which he had been informed and which he had understood moments before. The transition from the polygraph examination to the post-test interview did not represent a serious change of circumstances which would render Fields' answers involuntary. Therefore, the knowing and intelligent relinquishment of rights continued during the post-examination interrogation. *Id.*, 103 S.Ct. at 396–97.

The Supreme Court's analysis is equally persuasive when applied to the facts in the instant case. Roger was informed verbally and in writing of his Miranda rights. The examining officer ascertained that Roger understood those rights. Roger then signed a waiver of rights. As in *Wyrick v. Fields*, this knowing and intelligent waiver continued throughout the polygraph examination and post-test interview. There was, consequently, no violation of Roger's Fifth Amendment rights.

■ Roger's final contention is that the post-test interrogation and its subsequent admission into evidence impinged upon his Sixth Amendment right to counsel. Under the Sixth Amendment, the accused has a right to counsel at any stage of the prosecution (1) where incrimination may occur or (2) where the opportunity for effective defense must be seized or be foregone. *Manley v. State*, (1980) Ind.App., 410 N.E.2d 1338, 1342. The polygraph examination and the post-test interrogation constituted a critical stage of the proceedings, triggering the Sixth Amendment right to counsel.

■ Yet the right to counsel may be waived by the accused. *Hatcher v. State*, (1981) 275 Ind., 49, 414 N.E.2d 561, 564. The waiver must be shown to have been knowingly, voluntarily and intelligently made, and that showing must appear on the record. *Id.*, 414 N.E.2d at 564–65. The record in the instant case indicates that Roger consulted with an attorney regarding the polygraph examination. Prior to the examination, Roger was informed in writing of his right to counsel. Moreover, the examining officer verbally advised Roger that he had a right to counsel, and that he could at any time discontinue the inter-

view and assert that right. After advising Roger of his rights, the examining officer allowed time for questions and discussion. Roger then signed a waiver of rights and the polygraph examination was administered. Roger later admitted that he was aware of his rights during the examination. Thus, the requisite showing of a knowing, intelligent and voluntary waiver appears in the record. There was no impingement on Roger's Sixth Amendment right to counsel.

Roger's attacks on the admissibility of his statement made during the post-test interview are without merit. The trial court did not err by admitting the testimony of the polygraph examiner.

ISSUE TWO

The second issue raised on appeal is directed at the sufficiency of the evidence supporting Roger's conviction. Roger was charged by information with exerting "unauthorized control over property ... by taking and carrying away said scrap aluminum." Roger stresses that there was no evidence he "took and carried away" property.

■ IND.CODE § 35–41–2–4 (1982) provides, "A person who knowingly or intentionally aids, induces or causes another person to commit an offense commits that offense...." Thus, a person may be charged as a principal but convicted upon evidence that he aided in the commission of the crime. *Johnson v. State*, (1981) Ind. App., 423 N.E.2d 623. In such cases, it is not necessary that the evidence show that the defendant personally participated in the commission of each element of the crime. *Harris v. State*, (1981) Ind., 425 N.E.2d 154, 156. The trier of fact may consider the defendant's failure to oppose the crime, his companionship with another person engaged in the crime, and his course of conduct. *Id.*

In the instant case, Roger was present at the time the scrap metal was sold. Although he suspected the scrap metal was stolen, Roger did nothing to prevent its sale. Afterwards, Roger continued to associate with the two boys who had stolen

the scrap, Randy and John. The jury properly could have considered these facts and concluded that Roger aided in the commission of the theft.

In reviewing a claim of insufficient evidence, the court on appeal neither weighs the evidence nor determines credibility, but it examines the evidence and reasonable inferences which support the verdict. The conviction will be affirmed if there is evidence, direct or circumstantial, from which a reasonable trier of fact could infer guilt beyond a reasonable doubt. *Davis v. State,* (1981) 275 Ind. 509, 418 N.E.2d 203, 206. Given this standard of review, we conclude that the evidence was sufficient to support Roger's conviction.

Judgment affirmed.

RATLIFF, P.J., and NEAL, J., concur.