**Harold MANSFIELD, Appellant–
Defendant,**

v.

**STATE of Indiana, Appellee.**

**No. 49A02–0412–PC–1028.**

Court of Appeals of Indiana.

July 14, 2006.

Transfer Denied Sept. 7, 2006.

Susan K. Carpenter, Public Defender of Indiana. C. Brent Martin, Deputy Public Defender, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, Harold Mansfield, challenges the post-conviction court's denial of his petition for post-conviction relief. Upon appeal, Mansfield argues that the post-conviction court erred in denying his petition.

We affirm.

On August 4, 1981, Mansfield pleaded guilty to D felony possession of over thirty grams of marijuana, a violation of the Indiana Uniform Controlled Substances Act. On September 22, 1981, the trial court accepted Mansfield's plea and sentenced him in accordance with the plea agreement to two years, with eighteen months suspended. The written plea agreement advised Mansfield of his right to a public trial by jury and his right to confront and cross-examine witnesses, but it did not advise Mansfield of his Fifth Amendment right not to incriminate himself.

Over two decades later, on November 3, 2003, Mansfield filed his pro se petition for post-conviction relief.[1] On August 13, 2004, Mansfield, represented by counsel, filed an amended petition for post-conviction relief, alleging for the first time that his guilty plea was not knowing, intelligent, and voluntary because he was not advised of his Boykin rights.[2] Mansfield further asserted that the record was missing and could not be reconstructed and thus, the record was silent as to him receiving the necessary advisement of his Boykin rights. The State failed to file a response to either petition.

The post-conviction court held an evidentiary hearing on the amended petition on October 14, 2004. At that hearing, Mansfield entered into evidence the death certificates of his defense attorney, Peter

1. Since his 1981 guilty plea, Mansfield has been convicted of Class B felony dealing in cocaine and was found to be an habitual offender. Mansfield received a ten-year habitual offender enhancement to his sentence. One of the two felony convictions underlying the habitual offender finding is the 1981 conviction for possession of marijuana which Mansfield is challenging in this appeal.

2. In Boykin v. Alabama, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), the United States Supreme Court held that, before accepting a guilty plea, a trial court must be satisfied that an accused is aware of his rights against self-incrimination, to trial by jury, and to confront his accusers. The Boykin court held that the record must affirmatively show, or there must be an allegation and evidence which shows, that the defendant was informed of, and waived, these rights. Id. Moreover, the Boykin Court made clear that waiver of these rights cannot be presumed from a silent record. Id.

Pappas, and two trial court bailiffs who served in 1981. He also submitted affidavits of Judge Richard Sallee, who presided over his guilty plea hearing and accepted the plea agreement, former Prosecutor Frank Pope, the current court reporter for the trial court Suzanna Cable, the former court reporter Donna Sheeks, and probation supervisor Susan Rees, wherein each individual indicated that they had no records or independent recollection of the case.[3] The State presented no evidence. On November 3, 2004, the post-conviction court entered its findings of fact and conclusions denying Mansfield relief. Specifically, the court made the following conclusions:

"1. The defendant testified that he did not remember being advised of his *Boykin* ... rights at the time of sentencing." The pre-printed plea agreement which he signed contains two of the three necessary rights advisement, i.e. the right to a jury and the right to confront his accuser. It is deficient in advising about the right against self-incrimination. There was no evidence that even if he had been advised of that right, he would have changed his plea to not guilty.

2. The Court is aware that the prosecutor neither carried its burden of pleading or proving [laches] nor offered evidence that the State would be prejudiced by the defendant's delay in filing. The prosecutor did not suggest that evidence had been disposed of or that its witnesses were unavailable. The prosecutor did state that it would be impossible to retry every case more than ten years old.

3. The defendant acknowledged that the purpose of his PCR was to avoid a sentence as a habitual criminal, implying that the defendant was satisfied with the 1981 guilty plea until it became the basis for the habitual designation.

4. In the absence of a transcript or reconstruction of the hearing, it is difficult if not impossible for the defendant to prove his claim that he was not advised of his rights. Since the record is silent as to his rights, the Court presumes he was not afforded his Constitutional protections.

5. Having noted the above, the easy answer would be to vacate the guilty plea and order a new trial. But the Court believes that the defendant has sat on his rights too long. Such a delay has waived his rights, even though the prosecutor did not plead or prove [laches]. The defendant's lack of diligence would make the State's burden of proof beyond a reasonable doubt more than difficult. To retry the defendant would be inconsistent with judicial economy.

6. Length of time alone is not sufficient to overturn the guilty plea. For each year of delay on the part of the defendant, there is an equal increase in the prosecutor's burden to retry the defendant. When the defendant has been diligent in his pursuit of righting a wrong, the courts have not attributed the delay to the defendant. In this case, however, there is no evidence that the defendant has been diligent or that this pursuit to overturn the conviction had been impeded. He should be held responsible for the delay.

7. There was evidence that at the time of the plea the defendant was greatly undereducated. He has been in

---

**3.** Ms. Sheeks also stated in her affidavit that she had knowledge that the tapes of the hearings were kept for ten years and then destroyed.

prison currently for approximately eight years. He was in contact with counsel before he was found to be a Habitual Offender. The Court [imputes] knowledge to the defendant about his PCR rights many years before he filed.

8. The defendant's lack of diligence, coupled with the longest period of delay the Court could find for any Indiana case, is enough for the Court *sua sponte* to find the defendant culpable of [laches].

9. One of the purposes of finalizing cases is to enable the parties and witnesses to move forward with their lives. This Court finds as a matter of law that even though the prosecutor did not carry its affirmative duty, the defendant also failed in his duty. The defendant's failure to attempt to right the wrong for 22 years is a violation of the State's right to retry the defendant." Appendix at 45–47.

■ Upon appeal, Mansfield argues that the post-conviction court erred in denying his petition for post-conviction relief based upon the doctrine of laches. Specifically, Mansfield argues that the State waived the affirmative defense by failing to plead it and present evidence.

■ The equitable doctrine of laches operates to bar consideration of the merits of a claim or right of one who has neglected for an unreasonable time, under circumstances permitting due diligence, to do what in law should have been done. *Armstrong v. State*, 747 N.E.2d 1119, 1120 (Ind.2001). Laches is an affirmative defense which the State must affirmatively plead in its responsive pleading. *Twyman v. State*, 459 N.E.2d 705, 711 (Ind.1984); Ind. Trial Rule 8(c). To prevail on a claim of laches the State has the burden of proving by a preponderance of the evidence that the petitioner unreasonably delayed

seeking post-conviction relief and that the State has been prejudiced by the delay. *Armstrong*, 747 N.E.2d at 1120. The burden of proving laches rests entirely upon the State. *Wilkerson v. State*, 728 N.E.2d 239, 243 (Ind.Ct.App.2000).

In its order denying Mansfield relief, the post-conviction court acknowledged three times that the State had not pleaded or proved the affirmative defense of laches. Nonetheless, the post-conviction court took it upon itself to find *sua sponte* that Mansfield's claim was barred by the doctrine of laches. In so doing, the post-conviction court stepped outside its judicial role, looking to the facts of the case and concluding without evidence or argument from the State that Mansfield unreasonably delayed in seeking relief and that the State was prejudiced thereby. The post-conviction court's actions were improper.

Although the facts make this a seemingly easy case for application of the doctrine of laches, it remains that the burden of pleading and proving such was with the State. Here, the State failed to respond to Mansfield's amended petition, let alone assert the affirmative defense of laches, and failed to present any evidence at the post-conviction hearing. Thus, the State wholly failed to carry its burden. We therefore conclude that the post-conviction court erred in denying Mansfield relief based upon the doctrine of laches.

■ Mansfield requests that the post-conviction court's decision be reversed, and that his petition for post-conviction relief be granted, thereby vacating his conviction and granting him a new trial. The State agrees that the trial court improperly denied Mansfield's petition for post-conviction relief based upon the doctrine of laches, but requests that we remand for further proceedings. We disagree with both requested outcomes, and for reasons explained below, affirm the judgment of the post-conviction court.

In *Hall v. State*, 849 N.E.2d 466, 467 (Ind., 2006), our Supreme Court held that "[a] petitioner who pursues a claim for post-conviction relief challenging a plea of guilty on the ground that he was not advised of his *Boykin* rights is not entitled to relief solely because the guilty plea record is lost and cannot be reconstructed. Rather, the petitioner has the burden of demonstrating by a preponderance of the evidence that he is entitled to relief." In so holding, the Court emphasized that in Indiana post-conviction proceedings have long been deemed collateral[4] and that a petitioner for post-conviction relief has the burden of establishing grounds for relief by a preponderance of the evidence. Slip op. at 8–9. Further, citing *Parke v. Raley*, 506 U.S. 20, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992), the Court found that the presumption of regularity which attaches to final judgments makes it appropriate to shift the burden of proof to the petitioner.[5] Slip op. at 9.

Pursuant to the dictates of *Hall*, Mansfield was not entitled to post-conviction relief simply because he established that his guilty plea record was lost and could not be reconstructed. *Hall*, at 467. The burden was upon Mansfield to affirmatively establish by a preponderance of the evidence that he was not advised of his rights to silence, to trial by jury, and to confront witnesses, thus rendering his guilty plea unknowing and involuntary.[6] Id. Aside from proving that the record was missing and could not be reconstructed, Mansfield presented no other evidence demonstrating that he was entitled to relief. During the hearing, Mansfield testified that even he could not remember whether he was advised of his *Boykin* rights. Because Mansfield did not establish that he was not advised of his *Boykin* rights and thus, that his guilty plea was unknowingly and involuntarily made, Mansfield did not establish that he was entitled to post-conviction relief. We therefore conclude that the evidence presented at the post-conviction hearing does not lead to a conclusion opposite that reached by the post-conviction court.

The judgment of the post-conviction court is affirmed.

BAILEY, J., and MATHIAS, J., concur.

---

4. The Court noted that a "collateral challenge" is " 'an attack made in a proceeding that has an independent purpose other than to impeach or overturn the judgment, although impeaching or overturning the judgment may be necessary to the success of the action.' " 849 N.E.2d at 471 n. 6 (quoting *Ind. Dep't of Envtl. Mgmt. v. Conard*, 614 N.E.2d 916, 922 (Ind.1993)). The Court, however, did not explain what "independent purpose," other than the subjective independent purpose of the petitioner, a post-conviction *proceeding* may have other than to overturn the underlying conviction. See Ind. Post–Conviction Rule 1(1)(b) (stating that post-conviction relief "comprehends and takes the place of all other common law, statutory, or other remedies heretofore available for challenging *the validity of the conviction or sentence* ").

5. The Court's logic strongly suggests that even if a petitioner could point to a "silent" record, and not merely a "missing" record, it would still be appropriate to shift the burden of proof to the petitioner alleging a violation of his *Boykin* rights because, under the authority as set out by our Supreme Court in *Collins v. State*, 817 N.E.2d 230 (Ind.2004) and *Tumulty v. State*, 666 N.E.2d 394 (Ind.1996), post-conviction relief, which is deemed "collateral," is the only avenue available for challenging the validity of the guilty plea. This could be inconsistent with *Boykin's* holding that waiver cannot be presumed from a silent record.

6. Our Supreme Court has not provided guidance as to how, under such circumstances, a petitioner could affirmatively establish a negative.